# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **KATHERYN KASEMAN, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03-1858 (ESH)** |
| | ) | |
| **DISTRICT OF COLUMBIA, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

On July 7, 2004, this Court granted summary judgment on behalf of the plaintiffs and awarded $352,714.58 in attorney's fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B). *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 32 (D.D.C. 2004). That decision spawned the current dispute relating to plaintiffs' claim for the attorney's fees incurred in pursuing the underlying fee litigation. The central question is whether this claim for fees-on-fees must, for attorney's fee cap purposes, be considered the same "action" as an earlier administrative hearing -- which would mean that the prevailing plaintiffs may receive no more than $4,000 in attorney's fees -- or whether it is a separate "action," therefore not subject to this $4,000 attorney's fee cap. For the reasons set forth below, the Court deems this litigation to be a separate and distinct action from earlier proceedings, and therefore, plaintiffs may recover in excess of the $4,000 in attorney's fees that they were awarded as a result of having prevailed at the administrative level.

**BACKGROUND**

IDEA is a federal statute that aims to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  Parents of disabled children are guaranteed the opportunity to participate in the "identification, evaluation, and educational placement of the child," 20 U.S.C. § 1415(b)(1), and if they have complaints, they are entitled to an "impartial due process hearing," 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they may be represented by counsel.  20 U.S.C. § 1415(h)(1).  Parents may then bring a suit in federal or state court.  20 U.S.C. § 1415(i)(2)(A).  A court may award reasonable attorney's fees to prevailing parties, both for the civil lawsuit, 20 U.S.C. § 1415(i)(3)(B), and for earlier administrative proceedings.  *See Moore v. District of Columbia*, 907 F.2d 165, 176-77 (D.C. Cir. 1990) (en banc).

Plaintiffs, forty-two minor children and their parents or guardians, previously prevailed in administrative hearings against the District of Columbia Public Schools and the District of Columbia (hereinafter collectively "DCPS") pursuant to IDEA.  This Court then granted summary judgment in plaintiffs' favor in their subsequent suit under IDEA, 20 U.S.C. § 1415(i)(3)(B), to recover attorney's fees and costs, as well as pre- and post-judgment interest. *Kaseman*, 329 F. Supp. 2d at 32.  In particular, the Court entered judgment for fees and costs covering the administrative proceedings in the amount of $352,714.58.  In addition, the Court awarded "reasonable attorney's fees and costs incurred in this fee litigation, subject to the submission of an affidavit within 20 days from the date of this Order justifying those fees and costs." *Id*. at 32-33.  Thereafter, on August 2, 2004, the Court granted plaintiffs' unopposed

2

Motion for Attorney's Fees, and awarded attorney's fees in the amount of $90,926.83.  It further

ordered that those fees were to be paid within sixty days.  At a hearing on October 22, 2004,

DCPS argued that it could not legally comply with the Court's August 2 Order because it is

precluded by law from paying more than $4,000 in fees per action and that requiring the payment

of $90,926.83 to the forty-two plaintiffs would exceed this $4,000 statutory fee cap.

Since fiscal year 1999, each D.C. Appropriations Act has limited the attorney's fees that

may be paid by the District of Columbia in IDEA actions.  *See Kaseman*, 329 F. Supp. 2d at 23

n.1; *see also Calloway v. District of Columbia*, 216 F.3d 1, 4-5 (D.C. Cir. 2000).  The present

cap stands at $4,000.  Pub. L. No. 108-335 § 327, 118 Stat. 1322 (2004).[1]  The fiscal year 2005

Act, which is substantially the same as the fiscal years 2003 and 2004 Acts, provides in pertinent

part:

> None of the funds contained in this Act may be made available to
> pay-- (1) the fees of an attorney who represents a party in an action . . . ,
> including an administrative proceeding, brought against the District of
> Columbia Public Schools under the Individuals with Disabilities
> Education Act (20 U.S.C. 1400 *et seq.*) in excess of $4,000 for that
> action. . . .

*Id.*

## ANALYSIS

DCPS argues that, for purposes of the Appropriations Acts, plaintiffs' fees-on-fees claim

is part of the same "action" as their prior IDEA administrative proceedings.  (Defs.' Mem. at 5.)

Indeed, defendants seek to define "an action" as meaning "a single continuum" that includes both

---

[1]The Appropriations Act for fiscal year 2002 contained no explicit fee cap, but limited
fee payments, both in 2002 and thereafter, for amounts previously incurred that exceeded the
applicable previous year's cap.  Pub. L. No. 107-96 § 140(a), 115 Stat. 958 (2001).

the administrative fee determination, as well as any subsequent court action.  (Defs.' Reply at 3.)

Defendants see this construction as in keeping with Congress' intent in instituting the statutory

fee cap, *i.e.*, to produce additional resources for direct educational services for disabled children.

(Defs.' Mem. at 4-5 (quoting *Calloway*, 216 F.3d at 8 and *Armstrong v. Vance*, 328 F. Supp. 2d

50, 61-62 (D.D.C. 2004)).)  Plaintiffs respond by arguing that under the plain language of the

Appropriations Acts, the fees-on-fees litigation is a new "action," and therefore the $4,000 cap

applicable to the earlier administrative proceedings does not apply to the present claim for fees.[2]

(Pls.' Opp. at 3.)

  The first place to turn to determine the meaning of "action" is the plain language of the

statute.  "When Congress wants to use an appropriations act to limit court authority, it knows

precisely how to do so."  *Calloway*, 216 F.3d at 9.  Congress could have defined "action" with

particularity, but instead it left the term unexplained, except to provide that it also encompasses

"an administrative proceeding."  Thus, the plain language of the statute does not provide any

guidance as to the question under review.

---

  [2]Plaintiffs also object that it is too late for defendants to raise these arguments given their failure to oppose plaintiffs' fee petition prior to the entry of the Court's August 2 Order.  The Court, however, must disagree.  Although it is regrettable that defendants did not brief this matter earlier, under Fed. R. Civ. P. 60(b), the Court may relieve a party of a final order where the "judgment is void" or for "any other reason justifying relief from the operation of the judgment."  Plainly, the interests of justice are served by determining whether defendants may lawfully pay the sums previously ordered by the Court.  If defendants are legally precluded from paying these sums, Rule 60(b) could well come into play.  The Court therefore exercises its discretion to reach the merits, as opposed to finding that defendants waived their right to argue that the cap prevents compliance with the August 2, 2004 Order.  *Cf. August v. FBI*, 328 F.3d 697, 701-02 (D.C. Cir. 2003) (citing *Schanen v. United States Dep't of Justice*, 798 F.2d 348, 349 (9th Cir.1986)) (allowing government to raise issues belatedly, and rejecting a "press it at the threshold, or lose it for all times" approach).

Despite this lack of statutory guidance, defendants attempt to argue that the phrase "action, including an administrative proceeding," necessarily means that Congress affirmatively combined all court and administrative proceedings for fee cap purposes.  (Defs.' Mem. at 6.) The argument is unavailing, for the phrase merely makes clear that a fee cap applies not only to civil actions explicitly authorized by IDEA, but also to administrative hearings.  *See Moore*, 907 F.2d at 176-77 (holding that attorney's fees may be awarded to a prevailing party at an administrative hearing).  It sheds no light whatsoever on the pertinent question of what constitutes "an action."

Just as the plain language of the Appropriations Act provides no insight into whether an administrative proceeding and a subsequent civil suit seeking attorney's fees are the same "action," the legislative history cited by the defendants is equally uninformative.  While it is clear from the statute that in enacting fee caps Congress intended to rein in litigation costs for IDEA claims, the only legislative history cited by defendants is a statement by Senator Kay Bailey Hutchison concerning the fiscal year 2002 D.C. Appropriations Act, the only year since 1999 in which Congress imposed *no cap* on fees incurred that year.  The quote, moreover, provides no clarification as to the meaning of "action;" rather, it only shows that Congress wanted to preclude 2002 appropriations from being used to pay *prior years'* attorney's fees.  (Defs.' Mem. at 4 (quoting *Armstrong*, 328 F. Supp. 2d at 61-62).)

Given this absence of unambiguous statutory language or "clear indications of Congress' intent" with respect to this issue, *see Calloway*, 216 F.3d at 11 (quoting *National Treasury Employees Union v. Devine*, 733 F.2d 114, 120 (D.C. Cir. 1984)), the Court will turn to "the

customary meaning of words" for guidance.  *See id.* at 12 (quoting *United States v. Dickerson*, 310 U.S. 554, 562 (1940)) .

"'[A]ction' is generally defined as a *judicial* proceeding in which one asserts a right or seeks redress for a wrong."  1 Am. Jur. 2d Actions § 4 (2004) (emphasis added).  This definition suggests that Congress included the phrase "action, including an administrative proceeding" to make clear that the fee cap encompassed an administrative hearing conducted pursuant to 20 U.S.C. §§ 1415(f)(1), as well as a "judicial proceeding."  However, for the reasons already discussed concerning the statute's plain language, this definition does not help to discern whether "action" should be construed to mean that an administrative proceeding and a suit for fees constitute one action or separate actions.

Defendants further note that "[a]n appeal is a continuation of an original proceeding and not a new action."  (Defs.' Mem. at 5-6 (quoting 1 Am. Jur. 2d Actions § 4).)   But this proposition is likewise unhelpful to understanding the meaning of "action," for contrary to defendants' argument, the instant proceeding is not akin to an appeal of the earlier administrative hearing.  Indeed, this Court has already reached this very conclusion.  "Because district courts have the exclusive jurisdiction to award attorney's fees under section 1415(i)(3)(B) of IDEA, an action for attorney's fees is not akin to an appeal from an administrative decision."  *Kaseman*, 329 F. Supp. 2d at 25 (citing *Zipperer v. Sch. Bd. of Seminole County, Fla.*, 111 F.3d 847, 851 (11th Cir. 1997)).  *See also Armstrong*, 328 F. Supp. 2d at 54-55 (action for IDEA attorney's fees is akin to a "*de novo* civil action under the IDEA" and is "wholly different" from an appeal of a hearing officer decision); *Moore*, 907 F.2d at 171 ("[T]he text and structure of [IDEA] directly support the inference that Congress intended section 1415(e)(4) to provide *an independent cause*

6

*of action* for fees." (emphasis added)); *id.* at 167 (distinguishing between civil actions in federal

court and administrative proceedings and finding that Congress intended to authorize fees for

prevailing parties in both types of proceedings); *Akinseye v. District of Columbia*, 193

F. Supp. 2d 134, 142-43, 144 (D.D.C. 2002) (adopting rationale that an IDEA civil action for

attorney's fees is "not analogous to the appeal of an agency hearing, but is rather an independent

action predicated on statutory liability").[3/]  Therefore, because the instant suit is not an appeal of

a prior administrative determination, defendants' argument must be rejected.

Finally, defendants refer to the definition of proceeding.  "As ordinarily used,

['proceeding'] is broad enough to include all methods of invoking the action of courts and is

generally applicable to any step taken to obtain the interposition or action of a court."  (Defs.'

Mem. at 6 (quoting 1 Am. Jur. 2d Actions § 3).)  But this definition is both irrelevant and

unhelpful.  "Action," not "proceeding," is the term at issue.  *See* Pub. L. No. 108-335 § 327.   In

addition, the phraseology of the statutes plainly indicates that "administrative proceeding" is

included as an illustration of the kind of action as to the which the cap applies.  Given the

structure of the sentence, even if the generic term "proceeding" might normally "subsume an

initial adjudicative activity and any subsequent court-related efforts to vindicate the same

---

[3/]Defendants cite *Moore*, 907 F.2d at 176, and *Smith v. Roher*, 954 F. Supp. 359, 362
(D.D.C. 1997), for the proposition that, because those cases construed IDEA to entitle prevailing
plaintiffs to a fee in either administrative proceedings or civil actions by considering each as a
separate level, the converse (*i.e.*, blending the two levels for fee cap purposes) is required by the
divergent language of the Appropriations Acts, which "affirmatively combines them" by
referring to an "action, including an administrative proceeding."  (Defs.' Mem. at 6.)  For the
reasons already stated, the phrase that defendants rely on does not mean what they suggest.  And
obviously, just because the cited cases considered the two types of proceedings separately does
not necessitate the conclusion that the Appropriations Act should be read to mean the opposite,
*i.e.*, that the two levels comprise a single action.

claimed right" (Defs.' Mem. at 6), in the instant context, the term is more specific --
"*administrative* proceeding" -- and this is clearly a type of "action," rather than the other way
around.  In any event, the definition of "proceeding," like that of "action," does not answer the
question of whether an administrative hearing and a subsequent suit for attorney's fees constitute
a single "action" or separate actions for purposes of the fee cap.

Having failed to resolve this dilemma by looking to the term's customary usage, the
Court instead relies on caselaw to discern the meaning of the statute.  There is a "very strong
presumption" that appropriation acts do not change substantive law, *Calloway*, 216 F.3d at 9
(quoting *Building & Construction Trades Dept., AFL-CIO v. Martin*, 961 F.2d 269, 273 (D.C.
Cir. 1992)) (internal quotation marks omitted), and this Circuit has held that "[t]he D.C.
Appropriations Acts [containing attorney's fees caps] do not amend the IDEA. . . ." *Algeria v.
District of Columbia*, 2004 U.S. App. LEXIS 25138, at *20 (D.C. Cir. Dec. 3, 2004).  In the
absence of explicit statutory language, "when appropriations measures arguably conflict with the
underlying authorizing legislation, their effect must be construed narrowly." *Calloway*, 216 F.3d
at 9 (quoting *Donovan v. Carolina Stalite Co.*, 734 F.2d 1547, 1558 (D.C. Cir. 1984)) (internal
quotation marks omitted).  Thus, this Court must construe "action" in the manner most likely to
enable plaintiffs to enforce their rights under IDEA.  To do so, the Court concludes that the
earlier administrative proceedings and the instant attorney's fee litigation are distinct "actions"
subject to separate fee caps.

This result is consistent with this Circuit's requirement that prevailing parties be fully
compensated (or in this case, up to the amount of the applicable fee cap) for all claims for which
they are entitled to attorney's fees, and its treatment of fees-on-fees actions as generally being

distinct from the underlying claims and as being separately compensable. *See Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 898-99 (D.C. Cir. 2004).[4/]  For instance, in *Turner*, the Court viewed later fees-on-fees litigation as involving "distinct claims" and as being "fractionable" from the earlier proceedings, and therefore, each action was to be considered separately. *Id.* at 899.  *Cf. Armstrong*, 328 F. Supp. 2d at 55 (quoting *J.B. v. Essex-Caledonia Supervisory Union*, 943 F. Supp. 387, 390 (D.Vt. 1996)) ("In a fee claim action, a court makes a judgment regarding an entirely different set of factual and legal questions, considering whether and to what extent the claimant is a prevailing party, as well as the reasonableness of the time spent and the hourly rate charged." (internal quotation marks omitted)).

Moreover, the Court cannot agree with defendants' argument that the approach adopted here will defy Congress' intent to avoid undue diversion of District funds from educational to IDEA litigation purposes.  (Defs.' Mem. at 7.)  Rather, it is sincerely hoped that the result reached here will motivate defendants to avoid unnecessary fee litigation by promptly paying prevailing parties the fees and costs incurred at the administrative hearing stage.  As is clear from the Court's prior opinion in this case, defendants unjustifiably refused or delayed paying the fees of parties who had prevailed at the administrative level despite their statutory right to prompt payment.  As a result of defendants' recalcitrance, they needlessly forced plaintiffs to seek court intervention.  Clearly, it was within defendants' power to avoid this type of unnecessary litigation, thereby conserving the District's resources and hopefully realizing Congress' goal of

---

[4/]Although *Turner* involved a claim for attorney's fees in a civil rights suit, *see* 42 U.S.C. § 1988, its principles are applicable to a suit for attorney's fees under IDEA, 20 U.S.C. § 1415(i)(3)(B).  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (holding that the standards for awarding attorney's fees in civil rights litigation "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'").

making more money available for the real beneficiaries of the IDEA -- the disabled children of this community.  *See Calloway*, 216 F.3d at 8-9.

In addition, if the Court were to adopt defendants' approach, it would undercut IDEA's purpose of assisting disabled children.  If attorneys are limited to a combined $4,000 cap for both the administrative hearing and the federal court litigation regarding fees, there would be a powerful disincentive for attorneys to undertake IDEA representation given the District's longstanding and well-documented practice of either not paying or delaying the payment of fees and costs to prevailing parties.  Defendants' position would also serve to encourage defendants to continue in their practice of stonewalling legitimate fee requests.  Therefore, as recognized in *Calloway*, defendants' suggestion that one cap be applied to both the administrative proceeding and the ensuing fee litigation would effectively change parents' rights under the IDEA in violation of the "very strong presumption that appropriation acts do not amend substantive law." 216 F.3d at 9 (internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, the Court concludes that this is a separate action not subject to the same $4,000 cap as was applicable to the administrative proceeding.  As a result, defendants are required to pay the fees awarded by this Court in its August 2, 2004 Order.[5]

---

[5] Since the award is allocated among forty-two plaintiffs, each will receive approximately $2,165 in fees, which is well within the $4,000 fee cap.

10

**SO ORDERED.**


_____ s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:  January 6, 2005